### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FRANCESCO FLORO,**

**Plaintiff,**

**v.**                                                     **Case No:  6:12-cv-928-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

### MEMORANDUM OF DECISION

Francesco Floro (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to consider all the relevant medical evidence in determining his residual functional capacity ("RFC"); 2) posing a hypothetical question to the Vocational Expert ("VE") that did not adequately reflect his limitations; and 3) finding his testimony concerning his impairments and limitations not credible.  Doc. No. 19 at 10-17.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

### I.      STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.    ANALYSIS.

### A.  RFC.

Claimant presents two arguments concerning the ALJ's RFC determination. First, Claimant argues that the ALJ failed to consider his multilevel cervical spine degenerative disc and joint disease ("Degenerative Disc Disease") in determining his RFC. Doc. No. 19 at 11. Conversely, the Commissioner argues that the ALJ was not obligated to consider Claimant's Degenerative Disc Disease because Claimant's medical records demonstrate a "lack of any clinical focus on [the] impairment" and Claimant did not raise that impairment at any point during the administrative proceedings or hearing. Doc. No. 20 at 8-10 (citing *Robinson v.*

*Astrue*, 365 F. App'x. 993, 995-96 (11th Cir. 2010) and *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005)). Consequently, the Commissioner contends that the ALJ did not error by failing to consider Claimant's Degenerative Disc Disease. Doc. No. 20 at 8-10.

Second, Claimant argues that the ALJ erroneously relied on opinions of non-examining physicians in determining his RFC, because the opinions were offered prior to diagnosis of, and thus did not account for, Claimant's Degenerative Disc Disease, emphysema, and chronic lung disease. Doc. No. 19 at 12-13. Conversely, the Commissioner argues that the ALJ's reliance on opinions of non-examining physicians was not erroneous since their opinions were not contradicted by the opinion(s) of any examining or treating physician. Doc. No. 20 at 10-12 (citing *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) and *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 850-51 (11th Cir. 2006)).

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(e). A claimant's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* If a claimant can still do the kind of work he or she has done in the past, then the Regulations require that the claimant be found not disabled. The burden is on the claimant to show that he or she can no longer perform his or her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986). The responsibility for determining a claimant's RFC rests solely with the ALJ. 20 C.F.R. § 404.1513(b)(6) (the lack of a medical source statement stating what the claimant can still do

despite her impairments will not make a medical report incomplete); 20 C.F.R. § 404.1527(e)(2).[1]  In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

### 1. Claimant's Degenerative Disc Disease.

On February 19, 2010, Claimant underwent a CT scan of the neck with intravenous contrast.  R. 938.  The scan revealed that Claimant was suffering from mild mediastinal lymph node enlargement, paraseptal emphysema, and Degenerative Disc Disease.  R. 938.  This was the first indication that Claimant was suffering from Degenerative Disc Disease.  A subsequent CT scan performed on June 8, 2010, again indicated that Claimant was suffering from Degenerative Disc Disease.  R. 949.  These diagnostic reports represent the only evidence of Claimant's Degenerative Disc Disease in the record.

Throughout the proceedings below, Claimant never asserted that his Degenerative Disc Disease contributed to his disability.  *See* R. 1-277.  For example, Claimant's memorandum to the ALJ states, in relevant part, as follows:

> The claimant alleges disability based on the combination of the following severe impairments: chronic chest pain and pressure; status post multiple cardiac catheterizations and stenting; coronary disease; chronic obstructive pulmonary disease; emphysema; status post a left radical orchiectomy with chronic pain; hyperlipidemia; history of hypertension; bilateral pulmonary nodules, stable per CT scan; chronic hoarseness with throat pain.

R. 268.  Notably absent is Claimant's Degenerative Disc Disease.  *See* R. 268.  Further, Claimant did not allege that his Degenerative Disc Disease contributes to his alleged disability during the

---

[1] "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments ..., your [RFC] ..., or the application of vocational factors, the final responsibility for deciding these issues is reserved for the Commissioner."  20 C.F.R. § 404.1527(d)(2).

hearing (*See* R. 33-66), nor did Claimant's request for review by the Appeals Council argue that the ALJ failed to consider his Degenerative Disc Disease (*See* R. 274-77).

A claimant may not assert that the ALJ failed to consider an impairment when the claimant does not allege that he suffers from the impairment in his or her application or at the hearing. *Robinson*, 365 F. App'x. at 995-6; *Street*, 133 F. App'x. at 627-28. Thus, to challenge an ALJ's finding regarding a claimant's impairments, the claimant must allege that he or she suffers from the impairment in his or her application and an acceptable medical source must opine that the claimant suffers from the impairment.

Claimant, who was represented at the hearing, did not allege that his Degenerative Disc Disease contributed to his alleged disability when he filed his disability claim (*See* R. 143-266), in his memorandum to the ALJ (R. 267-72), at the hearing (R. 33-66), or in his letter to the Appeals Council requesting review (R. 273-77). Claimant bears the burden of demonstrating that he can no longer perform his past relevant work. *Jackson*, 801 F.2d at 1292. In doing so, it is incumbent upon Claimant to assert all of his impairments that contribute to his alleged disability. Here, Claimant did not carry his burden with respect to his Degenerative Disc Disease, and, further, since Claimant was represented at the hearing, the ALJ was not subject to a heighted duty to probe into all of the relevant facts surrounding his disability claim. *See, e.g.*, *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (holding that, where the right to counsel has not been waived, if claimant is not represented, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."). Given Claimant's failure to argue that his Degenerative Disc Disease contributed to his alleged disability, the ALJ did not error when it did not consider Claimant's Degenerative Disc Disease in determining his RFC. *Robinson*, 365 F. App'x. at 995; *Street*, 133 F. App'x. at 627-28.

### 2. Non-examining Physicians.

The record contains only two RFC assessments.[2]  On July 17, 2008, Dr. Nicolas Bancks, a non-examining physician, completed a RFC assessment concerning Claimant.  R. 713-20.  Dr. Bancks opined that Claimant could occasionally lift/carry twenty (20) pounds and frequently lift/carry ten (10) pounds.  R. 714.  Dr. Bancks opined that Claimant could stand/walk and sit for "about 6 hours in an 8-hour workday."  R. 714.  Dr. Bancks opined that Claimant had no limitations in pushing and pulling, no postural limitations, no manipulative limitations, no visual limitations, and no communicative limitations.  R. 714-17.  Finally, with respect to Claimant's environmental limitations, Dr. Bancks opined that Claimant should avoid concentrated exposure to hazards such as machinery and heights.  R. 717.  On December 1, 2008, Dr. Eric Puestow, a non-examining physician, completed a second RFC assessment concerning Claimant.  R. 746-53.  Dr. Puestow's opinions were identical to those of Dr. Bancks in all respects but one.  R. 746-53.  With respect to Claimant's environmental limitations, Dr. Puestow opined that Claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  R. 750.

In determining Claimant's RFC, the ALJ considered, among other things, Dr. Bancks' and Dr. Puestow's RFC assessment, stating as follows:

> As for the opinion evidence, two Disability Determination Services' physicians found the claimant capable of performing almost a full range of light exertional level activities with no concentrated exposure to pulmonary irritants such as fumes (Exhibits 23F and 26F).  I find these opinions to be essentially consistent with the objective medical evidence of record, and give them great weight.

R. 22.  Claimant argues that Dr. Bancks' and Dr. Puestow's opinions do not provide substantial evidence to support the RFC, because they were offered prior to his diagnosis with Degenerative Disc Disease, and prior to further diagnostic testing and treatment of his emphysema and chronic

---

[2] The record contains no RFC assessments from Claimant's treating physicians.  *See* R. 278-965.

lung disease.  Doc. No. 19 at 12.  Implicit in this argument is that the ALJ based her RFC determination solely on Dr. Bancks' and Dr. Puestow's opinions.

First, the Court finds that the timing of Dr. Bancks' and Dr. Puestow's opinions does not render them irrelevant with respect to Claimant's RFC.  The ALJ, after thoroughly discussing Claimant's medical records, including those post-dating Dr. Bancks' and Dr. Puestow's opinions, found the opinions "to be essentially consistent with the objective medical evidence of record[.]"  R. 22.  Indeed, review of the ALJ's accurate and thorough discussion of Claimant's medical records post-dating Dr. Bancks' and Dr. Puestow's opinions reveals that Claimant's impairments, including his pulmonary maladies, were essentially unchanged.  R. 21-2.  With respect to Claimant's Degenerative Disc Disease, the record contains no evidence that Claimant suffers any limitations therefrom.  *See Jackson*, 801 F.2d at 1292 (claimant bears to the burden of showing he or she can no longer perform his or her past relevant work).  Accordingly, the diagnosis of Claimant's Degenerative Disc Disease does not materially diminish the significance of Dr. Bancks' and Dr. Puestow's opinions, which represent the only RFC assessments in the record.  *See* R. 278-965.

To the extent Claimant argues that the ALJ based her RFC determination solely on Dr. Bancks' and Dr. Puestow's opinions, the Court disagrees.  The ALJ's RFC determination did not rest solely on Dr. Bancks' and Dr. Puestow's opinions.  Had she done so, reversal would be necessary.  *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (the opinions of a non-examining physician do not constitute substantial evidence when standing alone).  Instead, the ALJ's RFC determination was based on Claimant's testimony, Claimant's medical records, and Dr. Bancks' and Dr. Puestow's opinions.  R. 20-2.  For example, while the ALJ gave great weight to Dr. Bancks' and Dr. Puestow's opinions, the ALJ, based on Claimant's

testimony, deviated from their opinions by including a sit/stand option and finding that Claimant is unable to work in heat and humidity.  R. 22.  Accordingly, the ALJ's RFC determination was supported by substantial evidence.

### B.  Hypothetical to VE.

Claimant argues that the ALJ's hypothetical question to the VE did not adequately reflect his limitations.  Doc. No. 19 at 13-15.  Specifically, Claimant argues that the ALJ did not adequately define the "sit/stand option" contained in her hypothetical question.  Doc. No. 19 at 14.  As a result, Claimant contends that the ALJ's finding that there are jobs in the national economy which he can perform, is not supported by substantial evidence.  Doc. No. 19 at 15.  Conversely, the Commissioner maintains that that there is no indication that the VE was confused by the phrase "sit/stand option," nor did Claimant's counsel seek to clarify the phrase, thus suggesting that everyone present at the hearing understood the meaning of the "sit/stand option."  Doc. No. 20 at 12.  Further, the Commissioner argues that use of the "sit/stand option" without a modifier is commonly understood to mean that the job must allow Claimant to sit and stand at his or her own discretion.  Doc. No. 20 at 12 (citing *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005)).

Once a claimant proves that he or she can no longer perform his or her past relevant work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  One of the methods used to show that the claimant can perform other jobs is through the testimony of a VE. *Id*. at 1229.  In the Eleventh Circuit, the ALJ is required to pose hypothetical questions which are accurate and which include all of a claimant's limitations.

*Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). Where the ALJ relies significantly on the testimony of a VE to find that other jobs exist in the national economy that a claimant can perform, but fails to include all the claimant's limitations in the hypothetical question, the Eleventh Circuit has held that the final decision is not supported by substantial evidence. *Id*. at 1562 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[3] Once the Commissioner, by and through the ALJ, demonstrates the existence of other work in the economy that the claimant can perform, the burden shifts back to the claimant to prove that he or she is unable to perform the jobs identified by the VE. *Jones*, 190 F.3d at 1228 (citing 20 C.F.R. § 416.920).

At the hearing, the ALJ posed the following hypothetical question to the VE:

> I would like you to presume the ability to do light work with a sit/stand option. There should be no exposure to fumes, humidity, heat, or heights. And, obviously, the … hypothetical would be light work only. I have eliminated the past relevant work, so would there be any jobs available in the State of Florida or the national economy within the limitations of [the] hypothetical …?

R. 62-3. Based on the foregoing hypothetical, the VE opined that Claimant could perform the jobs of "cashier II," "ticket seller," and "office helper." R. 63. Thereafter, the ALJ asked the VE how she knows those jobs can accommodate a sit/stand option. R. 63. The VE testified that while the sit/stand option is not contained within the Dictionary of Occupational Titles (the "DOT"), her "20-years of experience in the field of vocational rehabilitation, which includes interviewing claimants about how work is performed, as well as conducting labor market studies with employers" informs her that the jobs she identified can accommodate a sit/stand option. R. 63-4.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Failure by the ALJ to define a sit/stand option is not per se error.  Here, there is no evidence that the VE, Claimant, or Claimant's representative was confused by the ALJ's inclusion of the sit/stand option.  *See* R. 62-6.  Indeed, the "reasonable implication" of imposing a sit/stand option is that Claimant would be able to change his position at his own volition.  *Riley v. Astrue*, Case No. 6:11-cv-1437-Orl-JRK, 2012 WL 3522640 at *7 (M.D. Fla. Aug. 14, 2012) (citing *Williams*, 140 F. App'x at 936-7).  Given the reasonable implication of the sit/stand option and lack of any evidence rebutting that implication, the Court finds that the VE's testimony identifying three jobs Claimant can perform, given his limitations, provided substantial evidence to support the ALJ's finding that there is significant work that Claimant can perform in the national economy.  *See Riley*, 2012 WL 3522640 at *7 (finding no error in ALJ's inclusion of a "sit/stand option" in the hypothetical question posed to the VE); *see also Kerridge v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1009-Orl-DAB; 2011 WL 3739025 at *10-11 (M.D. Fla. Aug. 22, 2011) (same).

## C.  Credibility.

Claimant presents two arguments with respect to the ALJ's credibility determination.  First, Claimant argues that the ALJ failed to articulate explicit and adequate reasons why it did not find him to be credible.  Doc. No. 19 at 15-17.  Conversely, the Commissioner argues that the ALJ articulated good cause to reject Claimant's testimony concerning the severity of his impairments.  Doc. No. 20 at 13-17.  Second, Claimant argues that the ALJ failed to indicate whether she accepted or rejected statements Claimant's wife made in a function report (the "Function Report").  Doc. No. 19 at 16.[4]  As a result, Claimant argues that the matter must be

---

[4] Claimant mistakenly argues that the ALJ failed to indicate whether she accepted or rejected his wife's testimony. *See* Doc. No. 19 at 16.  However, Claimant's wife did not testify at the hearing.  *See* R. 33-66.  Instead, Claimant's wife completed a function report, in which she described Claimant's functional capabilities and daily activities.  R. 236-43.

remanded for the ALJ to consider the Function Report.  Doc. No. 19 at 16-17 (citing *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990)).  Conversely, the Commissioner argues that any error in addressing the credibility of Claimant's wife's testimony was harmless error, as the wife's testimony was in accordance with Claimant's testimony, which was properly given little weight. Doc. No. 20 at 16-17 (citing *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981)).

### 1.  Claimant's Credibility.

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  *Foote v. Chater*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[5] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

---

[5] Social Security Ruling 96–7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id*. at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id*.

Claimant contends that the ALJ's credibility determination is encompassed in the following excerpt:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 20. Claimant argues that this "boiler type language" does not sufficiently articulate reasons for discrediting his testimony, and thus remand in necessary. Doc. No. 19 at 16.

Contrary to Claimant's argument, the ALJ articulated two reasons for discrediting his testimony concerning the severity of his impairments and pain. R. 20-2. First, the ALJ noted that Claimant's testimony reveals that his impairments and pain are conservatively controlled via the use of nitroglycerin and an inhaler. *See* R. 20. Second, the ALJ noted that the evidence

---

the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id*.

contained in Claimant's medical records contradicted the alleged severity of his impairments and pain. R. 20. Specifically, the ALJ explained:

> The objective medical evidence indicates that the claimant suffers from coronary artery disease with two stents and emphysema with mild chronic obstructive pulmonary disease, but the claimant's treatment-seeking history, diagnostic test results, clinical signs, symptoms, medications and other prescribed treatment demonstrate that the claimant is able to perform some physical work activities.

R. 20. Immediately following this finding, the ALJ proceeded to thoroughly discuss Claimant's medical records. R. 21-2. For example, the ALJ noted numerous points throughout Claimant's medical records indicating that testing revealed minor to moderate cardio and pulmonary issues. R. 21-2. The ALJ also noted numerous points throughout Claimant's medical records where Claimant indicated that he occasionally had chest pain or that his chest pain had improved due to medications or surgical procedures, such as stents. R. 21-2. Claimant does not challenge the accuracy of the ALJ's discussion of his medical records. *See* Doc. No. 19 at 15-17. The Court finds that the ALJ articulated good cause for discrediting Claimant's testimony and that her reasons were supported by substantial evidence. *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

## 2. Claimant's Wife's Credibility.

An ALJ must "state specifically the weight accorded each item of evidence and the reasons for his decision." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). The testimony of family members is evidence of a claimant's subjective feelings of pain. *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, the court will not find error if the credibility determination was implicit in the rejection of the claimant's

testimony.  *Id.* at 1254-55 (citing *Allen*, 642 F.2d 799); *see also Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006).

The Court finds the holdings in *Allen* and *Osborn* dispositive of the issue at bar.  In *Allen*, the claimant challenged the ALJ's denial of disability insurance benefits on the ground that the ALJ failed to make an adequate finding of fact regarding the credibility of his former wife's testimony.  *Allen*, 642 F.2d at 801.  Both claimant and his former wife testified as to his disability at the hearing.  The ALJ specifically found that claimant's testimony, the primary evidence in support of his alleged disability, was not credible.  *Id.*  No such finding, however, was made as to the testimony of claimant's former spouse.  Nevertheless, the court found that the ALJ's credibility determination as to the spouse was clearly implied by the explicit ruling as to claimant's testimony.  *Id.*

In *Osborn*, the Eleventh Circuit addressed whether the ALJ erred by not addressing statements made by claimant's wife in a function report.  *Osborn*, 194 F. App'x at 666.  There, the ALJ determined that claimant's testimony was not credible.  *Id.* at 664-66.  However, no such finding was made with respect to his wife's statements within the function report.  *Id.* at 666. Despite this fact, the *Osborn* court, following *Allen*, concluded that the ALJ's specific and explicit credibility determination as to claimant's testimony sufficiently implies a rejection of his wife's statements within the function report.  *Id.*

The issue at bar is analogous to that in *Osborn*.  Here, Claimant's wife completed a function report (R. 236-43), which the ALJ subsequently considered (R. 20).  The ALJ, however, did not indicate whether she found Claimant's wife's statements to be credible.  *See* R. 20-2.  As in *Osborn* and *Allen*, this failure is not grounds for reversal, since the ALJ's explicit credibility

determination regarding Claimant's testimony sufficiently implies that the ALJ also rejected his wife's statements in the Function Report. *Allen*, 642 F.2d at 801; *Osborn*, 194 F. App'x at 666.

III.   **CONCLUSION.**

For the reasons stated above, it is hereby **ORDERED** that the Commissioner's final decision is **AFFIRMED**, and the Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 26, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate
PO Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Teresa J. Davenport
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400

8880 Freedom Crossing
Jacksonville, FL 32256-1224